JOHN CORYEON v. THE PROVIDENCE–WASHINGTON INSURANCE COMPANY.

*Fire insurance—Pleading—Proofs of loss—Waiver.*

1. Under a declaration in an insurance case alleging that proofs of loss were forwarded to the Chicago office of the company, evidence that they were sent to its Providence office is inadmissible without an amendment, in which case the defendant is entitled to a continuance to enable it to produce witnesses from the Providence office, if desired; nor will the failure of the company to produce such proofs, on due notice, warrant the admission of such evidence, the company claiming that it never received the proofs, and therefore could not produce them.

2. Notice from an insurance company to a policy-holder that it did not propose to adjust or pay his loss, because it believed he had set fire to the building, will excuse him from making such proofs of loss before bringing suit; and evidence of such facts rebuts any idea of waiver of the limitation in the policy as to bringing suit.

3. Where, almost immediately after a fire, the assured was notified that the company claimed that he set fire to the building, and that no insurance would be paid for this reason, the fact that this was not one of the reasons assigned by the manager of the company for rejecting proofs of loss will not preclude the company from asserting it as a defense under a proper plea and notice.

Error to Bay.    (Cobb, J.)    Argued January 8, 1890. Decided January 17, 1890.

*Assumpsit* on an insurance policy.    Defendant brings error.    Reversed.    The facts are stated in the opinion.

*Simonson,    Gillett & Courtright,* for appellant, contended:

1. All of the conditions of the policy as to proofs of loss must be substantially, if not strictly, complied with, or no recovery can be had; citing 2 Wood, Ins. (2d ed.) 927, 928, 954, and cases cited; and a statement merely reiterating the language of the policy, as "household furniture, $367, groceries, $233," although the loss is total, is not a compliance with a condition requiring a particular account of the loss; citing *Beatty v. Ins. Co.*, 66 Penn. St. 9.

2. A provision in a policy that, in case of loss, the insured shall procure the certificate of the nearest magistrate, must be strictly complied with; citing 2 Wood, Ins. (2d ed.) § 442, p. 958, and cases cited.

3. The authority of the agent of an insurance company to receive proposals for insurance, and to countersign and deliver policies upon risks accepted by the company, does not extend to adjusting losses, nor empower him to waive stipulated conditions as to proofs of loss, and to bind the company to pay without them; nor does the fact that such agent assumes in a particular case to do those acts establish such authority; citing 2 Wood, Ins. (2d ed.) 987, and cases cited; *Bush v. Ins. Co.*, 63 N. Y. 531.

4. Coryeon, as mortgagee, should have seen that proofs of loss were made out and forwarded; citing 2 Wood, Ins. (2d ed.) 933; *Graham v. Ins. Co.*, 77 N. Y. 171.

*T. A. E. & J. C. Weadock,* for plaintiff, contended:

1. Delay, induced by the insurer or its agent, will not be considered; citing 2 Wood, Ins. (2d ed.) 468; and see generally on the subject of waiver, *Ins. Co. v. Cranich*, 36 Mich. 289; *Ins. Co. v. Lewis*, 30 Id. 41; *Miller v. Ins. Co.*, 70 Iowa, 704; and an agent authorized to make contracts and to issue policies may bind his principal by a waiver, if the party dealing with him has no notice of any limitation of his powers; citing *Rivara v. Ins. Co.*, 62 Miss. 720; *Schmidt v. Ins. Co.*, 2 Mo. App. 339; *Carpenter v. Ins. Co.*, 61 Mich. 644.

2. The time limited for bringing suit does not begin to run until the company exercises its option about rebuilding; citing *Ins. Co. v. Dodge*, 44 Mich. 423; *Mayor v. Ins. Co.*, 100 Am. Dec. 400; 2 Wood, Ins. (2d ed.) 1029 (note); *Spare v. Ins. Co.*, 17 Fed. Rep. 568; *Steen v. Ins. Co.*, 89 N. Y. 315; nor does the time begin to run until proofs of loss are presented, and the liability of the company fixed; citing *McMaster v. Ins. Co.*, 55 N. Y. 222.

3. The magistrate's certificate is merely to satisfy a condition in the policy inserted by the insurer; citing *Ins. Co. v. Pulver*, 126 Ill. 329.

4. Notice of loss to the local agent is sufficient; citing *Ins. Co. v. Sewing Machine Co.*, 41 Mich. 131; *Fisher v. Ins. Co.*, 33 Fed. Rep. 544.

5. The possession by agents of policies signed in blank is sufficient proof of their agency; citing 2 Wood, Ins. (2d ed.) 866; *Ruggles v. Ins. Co.*, 114 N. Y. 415; *Ins. Co. v. Ruckman*, 127 Ill. 364.

6. Letters received in reply to those proved to have been sent to a party are admissible without proof of handwriting; citing 1 Greenl. Ev. § 573 *a*.

7. Proof that the house was set on fire was properly excluded. The company was fully aware of all the facts, and when payment was refused it was not upon the ground that Barthel had burned his house, and additional or different objections cannot be made after suit brought; citing *Castner v. Ins. Co.*, 50 Mich. 273; *Richards v. Ins. Co.*, 60 Id. 420.

8. The right of Barthel to assign the policy and his rights thereunder, after the loss, to the plaintiff, cannot be rightly questioned; citing *Ins. Co. v. Carrington*, 43 Mich. 252; *Ins. Co. v. Dodge*, 44 Id. 420.

MORSE, J.   This is an action of *assumpsit* upon a policy of insurance issued by the defendant to one August Barthel on his dwelling-house and contents.   The loss, if any, under said policy, was payable to the plaintiff, John Coryeon, mortgagee, as his interest might appear.   The policy was assigned to plaintiff, January 31, 1888.   The property insured was claimed to be destroyed by fire November 12, 1886, and within the life of the policy. Suit was commenced March 22, 1888.   The defense was

the general issue, and under such issue notice was given of the following separate defenses:

1. That the house was vacant and unoccupied at the time of the fire.

2. That Barthel, before the fire, had removed from the house all the personal property insured in the house at the date of the policy.

3. That Barthel set fire to the building.

4. That Barthel attempted to cheat and defraud the defendant by false swearing, in this: That he swore in his proofs of loss that no articles were mentioned therein but such as were in said building at the time of the fire; whereas, in fact, most, if not all, of the articles mentioned in said proofs had been removed from said house, and were not therein at the time of the fire.

5. The suit was not commenced within 12 months after the loss occurred, as required by the conditions of said policy.

6. That the defendant has never been furnished with any proofs of loss under said policy, as required by the same, and that the assured, nor said plaintiff, nor anyone in their behalf, ever gave any notice to the company, nor rendered a particular account or proof under oath of said loss; whereby the defendant has been released from all liability on said policy.

Upon a jury trial in the Bay circuit court the plaintiff recovered a judgment for $654.48.

The plaintiff's declaration alleged that Barthel made due proofs of loss, which were duly forwarded to the defendant company at its office in Chicago, where they were received by said company. In his opening to the jury, before the giving of any testimony, Mr. Weadock, of counsel for the plaintiff, stated that the original proofs of loss were sent to the office of the defendant at Providence, R. I. Counsel for defendant interposed, and stated that the declaration alleged differently. Mr. Weadock replied that it was immaterial where they were sent; that the company had two general offices,—one at Chicago, and one at Providence. It then appeared that the plaint-

iff intended to show that one proof of loss, the first, was sent to Providence, and a second proof was sent afterwards to Chicago.  Defendant's counsel then claimed that they were misled by the declaration into the belief that the proofs sent to Chicago were the only proofs furnished them; that the company had received no other, but that they would be unable to prove that none had been received at Providence, as they had no witnesses there for that purpose, and could not procure such witnesses in time, if the suit went to trial at that time.  After considerable discussion the court was of the opinion, and so stated, that proof of the sending of the proofs of loss to Providence could not be shown without an amendment to the declaration alleging such transmittal.  Defendant's counsel gave notice that if the amendment was made they should ask for a continuance, whereupon plaintiff's counsel elected to proceed without making such amendment. Later on in the case, testimony of the making of these proofs, and that they were mailed to the defendant company at Providence, was admitted.  This is assigned as error.

Plaintiff's counsel contend that as they served notice on the defendant to produce these proofs of loss, and the defendant failed to produce them, they were entitled to make this showing, without reference to the allegations in the declaration, and independently of the same.  But as the defendant claimed it never received them, and therefore could not produce them, this contention is not tenable.  The counsel further claim that the admission of this testimony was harmless, as the court instructed the jury that these proofs were defective, and no recovery could be based upon them.  But the record shows that the evidence of the making of these first proofs of loss, and the sending of them by mail to Providence, was used in the case, by the express direction of the circuit

judge, to show that Barthel was excusable for his delay in executing the second proofs; that—

"He was not neglecting his duty, but that he did do what he supposed he ought to do under the requirements of the policy."

This testimony in regard to the first proofs of loss should not have been admitted under the declaration, without amendment, and, in case of such amendment, a continuance should have been granted for a sufficient length of time to obtain witnesses from Providence, if the defendant so desired.

The policy of insurance contained a clause that—

"Persons having a claim under this policy shall give immediate notice thereof to the company, and as soon thereafter as possible render a particular account, and proof thereof," etc.

It was claimed by the plaintiff that this requirement, as well as that requiring suit to be commenced within 12 months, had been waived by the defendant. The facts and circumstances to support this claim of waiver, as shown by plaintiff's proofs, were substantially as follows: Beard & Brigham were agents of the defendant company at Bay City, Mich., and received the application of Barthel for insurance. The policy issued by the company to Barthel provided that it should "not be valid unless countersigned by Beard & Brigham, agents at Bay City, Mich." It was countersigned October 30, 1885, by "Beard & Brigham, Agents."

Barthel did not sleep in his house the night of the fire, but stayed with a friend. The next day he notified Beard & Brigham of the loss. Soon afterwards he was introduced by them to a man as "one from the fire insurance company." This man asked him questions about the fire, and went down with him, and looked over the premises, the ruins of the fire. Before he went away he gave Barthel the following paper:

"BAY CITY, MICH., Nov. 19, 1886.

"We do not admit or deny any liability under Providence-Washington Ins. Co. policy No. 27,202, issued to August Barthel, on his frame dwelling situated on south side of second street, Bay City, Mich.

"SAMUEL GILLESPIE,
"Providence-Washington Ins. Co."

About two weeks after this, Barthel, who is an ignorant man, as far as business is concerned, took this paper to Mr. King, an attorney, who, on December 28, 1886, prepared the first proofs of loss, which were claimed to have been sent to the company at Providence. The receipt of them is denied by the defendant. Barthel himself had no further communication with the company, or any talk with any of its agents. At this point it is claimed that the plaintiff, who had a mortgage upon the property, took the matter in hand. He saw Beard & Brigham, who claimed that Barthel set the property on fire, and that they were not going to pay him anything. He asked them what they were going to do about his claim. He testified, under objection, that Tasker said that they would buy his mortgage for the company, and pay him his money; that the company could not buy it, but that some one would furnish the money, and buy him out; that plaintiff need not be alarmed about his share,— Tasker would take care of it for him. Plaintiff claims that Tasker was connected with Beard & Brigham, and authorized to speak for them. Tasker told him this at several different times; and Beard, also, told him that he would see that he got his pay. When the year was pretty nearly up, he saw Beard & Brigham again, and asked them who was going to settle the matter of the insurance. They said the company was not going to pay anything, it was too late.

"Q. What did they say, at any of those conversations,

as to whether the company would or would not pay the claim?

" *A.* He said the company was not going to pay anything.    He thought Barthel set it afire.

" *Q.* That was said in this conversation, and it was said in the first conversation?  Was that said more than once?

" *A.* Yes.    Every time I spoke about it he said the company were not going to pay nothing.    They said he was going to buy me out in the first place,—buy my mortgage.    Then he was going to pay me, and some one was going to hold this property for the company, and not give Barthel anything.

" *Q.* Why was that?

" *A.* Because he claimed he set it afire.

" *Q.* Why were they going to buy your mortgage?

" *A.* To pay me, because they done the business for me.    They always did.    I was relying on them always for my business."

He testified further that Tasker said—

" He was going to buy my claim, and see that I'd get my pay.    The company darn't buy it.    He must get somebody else here to buy me out."

The next step taken to collect this insurance was November 16, 1887, over a year after the fire, when Mr. Weadock wrote to Beard & Brigham stating that he was informed that Mr. Barthel had furnished proofs of loss in November, 1886, and that he was instructed by Mr. Coryeon to bring suit unless a settlement was promptly made.    November 18, 1887, Holger De Roode, manager of the defendant company, replied to this letter that no proofs of loss had been furnished, and that the records of the company did not show that Barthel had ever made any claim for loss, and that the company did not understand what action he proposed to bring, as no claim had ever been properly presented to them.    Weadock then prepared proofs of loss, and January 14, 1888, forwarded them to De Roode at Chicago.    Before this, however, on December 27, 1887, he wrote to De Roode, stating that

proofs of loss, as he had learned, were sent to the company soon after the fire occurred, and that the limitation as to time in which to bring suit was not regarded in the courts of Michigan, and asking De Roode to make further inquiry concerning the proofs of loss, and let him know the result. De Roode replied, December 29, 1887, as follows:

" In reply to your communication we do not see that there is anything further to be said on our part, beyond our assurance that you have been wholly misinformed; no proofs of loss, or even any papers purporting to be such, having ever been submitted to us, or any of our representatives or adjusters, in any way, shape, or manner, and to which fact we know that our city agents, Messrs. Beard, Brigham & Co., will bear witness. You do not even state under what policy this supposed claim is made, and we must therefore respectfully decline to entertain the matter at all."

December 30, 1887, Weadock wrote again, stating number of policy and name of assured, and that proofs of loss would soon be forwarded. January 27, 1888, De Roode wrote Barthel, acknowledging the receipt of papers purporting to be proofs of loss, but stating that it would be impossible for the company to recognize any liability whatever under the policy, as Barthel had not complied in any respect with its terms, specifying that immediate notice had not been given of the loss, and no particular account and proof of the same given as soon as possible thereafter; that over 14 months had elapsed before he presented his claim, and that all his rights under the policy were thereby forfeited; that the lapse of 12 months was fatal to any recovery; that the property had been vacated, thus voiding the policy; and that, to the best of the company's knowledge and belief, there was no such property ever in the dwelling as claimed in the alleged proofs of loss.

Suit was commenced February 17, 1888. Mr. King,

who prepared the first proofs of loss for Barthel, testifies that he saw Mr. Brigham soon after, or at the time, Gillespie was there, and was told by Brigham that—

"They did not at that time propose to adjust Mr. Barthel's claim, and that he [Brigham] had heard certain rumors, and they were not going to do it."

As regards the limitation of time within which to commence suit, there was no evidence of waiver to be submitted to the jury. Barthel had no encouragement from any one that his claim would be adjusted or paid; and from the first Mr. Coryeon testifies that the company, through its Bay City agents, refused to pay this loss, or adjust it, on the ground that Barthel had set fire to the building. And these agents never promised that the company would pay the amount, even, of his mortgage. He was informed that the company could not do it,—dare not do it; but Tasker, a servant of Beard & Brigham, and perhaps one of that firm, also, promised to either buy his mortgage or get some one else to do it, on account of the business relations between them and plaintiff. Relying upon this promise, which he distinctly understood was not the promise of the company, he waited until the year of limitation was up before taking any steps whatever to present his claim to the company, or to recover the loss. As soon as he took any steps in such direction he was met by a denial of liability. None of the defenses under the defendant's plea can be said to have been waived, unless it was the giving of immediate notice of the fire, and the furnishing of proofs of loss. The first proofs of loss made by Mr. King were confessedly defective, and, as there was no proof that the company ever received them, and all knowledge of them was denied by defendant, no waiver could be predicated upon them.

However, if Barthel was made acquainted with the fact

that the company did not propose to pay or adjust his loss because the defendant believed he had set fire to the premises, he would be excused from making any proofs of loss. Coryeon, certainly, was informed of this proposed defense; and he was not obliged to prepare proofs before bringing suit. While there was evidence tending to show a waiver, or what would amount to a waiver, of the requirement of proofs of loss, by the claim of the defendant's agents to Coryeon that Barthel set fire to the building, and the statement that the company would not pay him anything for. that reason, this same evidence also rebutted any idea of waiver of the time of limitation as to the bringing of suit.

The defendant also had the clear right to introduce proof tending to show that the building was set on fire by Barthel. The court was in error in refusing to receive such testimony. Mr. King, the attorney of Barthel, and the plaintiff, were both notified of this defense almost immediately after the fire; and the fact that this was not one of the reasons assigned by De Roode, in his letter to Mr. Weadock, for rejecting the claim of loss, could not preclude defendant from asserting it as a defense under its plea and notice, when it was undisputed that plaintiff had been persistently and always informed that no insurance would be paid for this reason.

It is not necessary to discuss the other allegations of error, as they mainly, grew out of the central errors, already noticed.

The judgment must be reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.